IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LARRY G. MCCLENDON, | § § § | |
| Appellant, | § § | |
| v. | § § | CIVIL NO. 4:13-CV-00267 |
| BOBBY SPRINGFIELD, | § § § | |
| Appellee. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Appellant Larry G. McClendon's ("McClendon") appeal from a final judgment of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, entered against McClendon and in favor of Appellee Bobby Springfield ("Springfield").  *See Springfield v. McClendon*, Adversary No. 11-4152 (Bankr. E.D. Tex. Mar. 21, 2013), Dkt. No. 28.  The Court heard argument on the appeal at a hearing held on August 27, 2013.  The Court having considered the parties' briefing and oral argument **AFFIRMS** the bankruptcy court's decision for the reasons set forth below.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

McClendon was the president and sole shareholder of NIA Insurance Agency, Inc. and NIA Asset Protection Group, Inc. (collectively "NIA").  Springfield served as Chief Financial Officer for NIA Insurance from 2003 through December 2007.  In December 2007, McClendon accused Springfield of theft and, in his capacity as president of NIA Insurance, terminated Springfield's employment.

On January 10, 2008, NIA and McClendon filed suit against Springfield in the 162nd District Court in Dallas County, Texas claiming theft and conversion (the "State Court

1

Litigation"). Springfield answered and filed a counterclaim against NIA and McClendon claiming, *inter alia*, defamation. On March 16, 2011, a jury found that McClendon made defamatory statements regarding Springfield. Specifically, the jury found that McClendon published multiple statements to various third-parties and staff at NIA concerning Springfield's alleged theft and conversion. The jury found that such statements were "defamatory per se." The jury further found that the publication of those statements were "made in good faith; concerned a subject matter that was of sufficient interest to [McClendon] or was in reference to a duty owed by McClendon; and were communicated to another party having a corresponding duty or interest." Such findings established that a qualified privilege existed. Nevertheless, the qualified privilege had been overcome in that case as the jury found by clear and convincing evidence that McClendon knew that a majority of his statements regarding Springfield were false or that he made the statements "with a high degree of awareness that [the statements were] probably false, to an extent that [McClendon] in fact had serious doubts as to the truth of the statement[s]." Ultimately, the jury found that Springfield was entitled to recover from McClendon actual damages in the amount of $341,000.00.

On May 11, 2011, McClendon filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. After the bankruptcy court granted leave, the 162nd Judicial District Court entered judgment in favor of Springfield on his defamation claims and against McClendon in the amount of $341,000.00 with pre-judgment and post-judgment interest. Thus, Springfield became a creditor of the debtor McClendon. Springfield then filed the underlying adversary proceeding on August 16, 2011, seeking to have the debt arising from the State Court Litigation owed by McClendon to Springfield declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). On January 30, 2012, McClendon confirmed a Chapter 11 plan of reorganization.

The bankruptcy court conducted a trial on the adversary proceeding on January 15, 2013. On March 21, 2013, the bankruptcy court issued its Findings of Fact and Conclusions of Law, including the following findings of fact:

- Under the circumstances presented in this case, the false statements made by McClendon to the designated third parties regarding Springfield created an objective substantial certainty of harm to Springfield.

- McClendon intentionally made the false statements to the designated third parties regarding Springfield in a manner and under circumstances substantially certain to cause injury to Springfield.

- McClendon's testimony that his publication of the false statements about Springfield to the designated third parties could not have caused injury to Springfield was not credible.

- McClendon's testimony that he had no intention to injure Springfield by his publication of the false statements about Springfield to the designated third parties was not credible.

- Springfield has demonstrated by a preponderance of the evidence the existence of a deliberate or intentional injury inflicted upon him by McClendon.[1]

*Springfield v. McClendon*, Adversary No. 11-4152 (Bankr. E.D. Tex. Mar. 21, 2013), Dkt. No. 29 ("FOFCOL") at 6-7 ¶¶ 22-26.  The bankruptcy court also entered the following conclusions of law, among others:

- The pernicious nature of a false statement to a third party accusing another person of a crime creates an objective substantial certainty of harm to that person in the absence of some extenuating circumstance.

- Under the circumstances presented in this case, the false statements made by McClendon to the designated third parties regarding Springfield created an objective substantial certainty of harm to Springfield.

- The false statements made by McClendon to the designated third parties regarding Springfield injured Springfield in an amount at least equivalent to the judgment amount.

---

[1] To the extent any of these findings of fact constitute conclusions of law, the bankruptcy court expressly adopted them as such.

- Due to his false statements to the designated third parties regarding Springfield, made under circumstances demonstrating an objective substantial certainty of harm, McClendon inflicted a willful and malicious injury upon Springfield.

FOFCOL at 15-16 ¶¶ 42-45. Accordingly, the bankruptcy court entered Judgment that the debt owed by McClendon to Springfield was non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). *Springfield v. McClendon*, Adversary No. 11-4152 (Bankr. E.D. Tex. Mar. 21, 2013), Dkt. No. 28. It is from that decision that McClendon now appeals.

## II. LEGAL STANDARDS

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). The bankruptcy court's findings of fact are reviewed for clear error, while its legal conclusions and any mixed questions of law and fact are reviewed *de novo*. *E.g.*, *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 583 (5th Cir. 2008). "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003) (quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992)). The bankruptcy court's determination of witness credibility is given deference. *Id.*

A bankruptcy court's decision to give preclusive effect to a state court judgment is a question of law that the court reviews *de novo*. *Boyce v. Greenway (In re Greenway)*, 71 F.3d 1177, 1180-81 (5th Cir. 1996). The dischargeability decision is also a question of law subject to *de novo* review. *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003) ("The decision to discharge [] debts represents a conclusion regarding the legal effect of the bankruptcy court's factual findings.").

In an action to determine the dischargeability of a debt, the creditor bears the burden of proof to establish by a preponderance of the evidence that his or her claim is not dischargeable.

4

*Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991). A debt is non-dischargeable if that debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "[A]n injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). Additionally, the injury must also not be "sufficiently justified under the circumstances" such that it would render the injury not "willful and malicious." *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. Appx. 360, 362 (5th Cir. 2007) ("[F]or an injury to be 'willful and malicious' it must satisfy our two-part test and not be sufficiently justified under the circumstances to render it not 'willful and malicious.'"). Debts arising from "recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998).

Under Texas law, liability for defamation may arise from "a negligent or intentional act that communicates defamatory matter to a person other than the person defamed." *Collins v. Sunrise Senior Living Management, Inc.*, 2012 WL 1067953, at *16 (Tex. App.– Houston [1st Dist.], Mar. 29, 2012, no pet.) (citing *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 380 (Tex. App.–Texarkana 1989, no writ)). Notwithstanding the defamatory nature of a statement, an employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing. *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 430 (5th Cir. 2009) ("Under Texas law, a qualified privilege extends to any communication by an employer about an employee made to a person having a corresponding interest or duty in the subject matter of the communication."). "That is, the law generally presumes good faith and want of malice when a statement is made under circumstances

5

giving rise to a qualified privilege." *Central American Aviation Services, S.A. v. Bell Helicopter Textron, Inc.*, 2007 WL 614132, at *5-6 (Tex. App.– Fort Worth, Mar. 1, 2007, no pet.) (citing *Free v. Am. Home Assur. Co.*, 902 S.W.2d 51, 55 (Tex. App.– Houston [1st Dist.] 1995, no writ). "Generally, this qualified privilege acts as a complete defense to a claim of defamation unless the employer's statement is made with 'actual malice' or the privilege is abused." *Frakes*, 579 F.3d at 430; *see also*, *Dixon v. Southwestern Bell Tel. Co.*, 607 S.W.2d 240, 242 (Tex.1980). "Malice sufficient to overcome a qualified privilege in a defamation action requires a showing that the defendant acted with knowledge or in reckless disregard of the falsity of the publicized matter, that is, that it entertained serious doubts about the truth of the statement." *Bell Helicopter*, 2007 WL 614132, at *5-6; *see also*, *Frakes*, 579 F.3d at 431.

### III. ANALYSIS

McClendon raises two issues on appeal: (1) whether the bankruptcy court erred by finding the debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(6); and (2) whether the bankruptcy court erred by ignoring McClendon's permanent injunction.

    a. <u>The Bankruptcy Court Did Not Err By Finding the Debt Non-dischargeable Pursuant to 11 U.S.C. § 523(a)(6)</u>

McClendon presents a hodgepodge of legally and factually unsupported and often indecipherable grounds for error regarding the bankruptcy court's finding of non-dischargeability, none of which merit a finding of error.

First, a number of McClendon's arguments center upon his assertion that the bankruptcy court should have found that the defamatory statements were published "recklessly" at best because the State Court jury's finding of "good faith" collaterally estopped the bankruptcy court from any finding of "actual knowledge" as to any of the statements. McClendon, however, does not cite any legal authority for the proposition that a jury finding of good faith collaterally estops

a subsequent finding of actual knowledge, nor is the Court aware of any.  Rather, McClendon cites only Black's Law dictionary, which defines good faith as "[h]onesty of intention, and freedom from knowledge of circumstances which ought to put the holder upon inquiry."  A lone dictionary definition will not suffice.  To accept McClendon's proposition would read out what the law currently allows; that is, the existence of a qualified privilege may be overcome by a showing that the defendant acted with knowledge or in reckless disregard of the falsity of the publicized matter.  Accordingly, upon *de novo* review, the Court finds that the jury's finding of good faith does not collaterally estop the bankruptcy court from a finding of actual knowledge.

Second, McClendon contends that the jury's finding of the existence of a qualified privilege is contrary to the bankruptcy court's finding that McClendon inflicted a willful and malicious injury upon Springfield.  Based upon such a premise, McClendon challenges the bankruptcy court's finding on three separate grounds: (1) that the concepts of "willful and malicious" and "good faith" are polar opposites; (2) that the jury's finding of the existence of a qualified privilege supports the fact that the statements at issue were "sufficiently justified under the circumstances"; and (3) that the statements falling under the qualified privilege could not have an objective substantial certainty of causing harm from a reasonable person's standpoint. While the jury's finding of the existence of a qualified privilege may offer some evidence in support of McClendon's position, the jury also found by clear and convincing evidence that the qualified privilege was overcome by a showing that the defendant acted with knowledge or in reckless disregard of the falsity of the publicized matter.  In light of the record as a whole, the Court finds that McClendon's sole reliance on his incomplete representation of the State Court jury's finding does not leave the Court "with the definite and firm conviction that a mistake has been committed" with respect to any relevant factual findings.  *In re Dennis*, 330 F.3d at  701.

Upon *de novo* review, the Court finds that the false statements published by McClendon accusing Springfield of a crime created an objective substantial certainty of harm to—and thus inflicted a willful and malicious injury upon—Springfield.

Third, McClendon argues that the bankruptcy court erred in finding that his witness testimony regarding both the objective and subjective prong was not credible because, as he has argued, the jury's finding of good faith collaterally estopped the bankruptcy court from any factual finding to the contrary. As this Court has already found, collateral estoppel did not restrict the bankruptcy court in any such manner.

Fourth, McClendon vaguely contends that the bankruptcy court committed error "to the extent" that the court applied collateral estoppel offensively against McClendon to prevent him from offering evidence as to: (1) a lack of subjective intent to injure Plaintiff, (2) a lack of objective substantial certainty of injuring Plaintiff, or (3) the circumstances surrounding his actions that make any injury that Plaintiff incurred not willful and malicious. McClendon does not specifically cite, and the Court does not find, any such alleged application of collateral estoppel.

Fifth, McClendon argues that the bankruptcy court should have, but did not, individually determine which damages were non-dischargeable because certain damages related to certain defamatory statements. In support, McClendon cites *In re Gupta*, 394 F.3d 347 (5th Cir. 2004), for the proposition that the Plaintiff must tie each defamatory statement to a specific amount of damage to demonstrate which damages are non-dischargeable. *Id.* at 352 ("Finally, there is no way to tie the damages found for breach of fiduciary duty back to specific instances of Gupta's misconduct that might correlate with Texas's amended statute of the federal standard."). Regardless of whether or not *In re Gupta* requires such an allocation of damages, the bankruptcy

court's finding that McClendon inflicted a willful and malicious injury upon Springfield was based upon and applied to any and all of McClendon's false statements regarding Springfield, thereby obviating the need to precisely allocate certain damages to certain statements.  *See* FOFCOL at 15-16 ¶¶ 42-45.  Accordingly, the Court finds that the bankruptcy court did not err by not individually determining which damages were non-dischargeable because it found that all of the damages were non-dischargeable.  *See* FOFCOL at 15 ¶ 44 ("The false statements made by McClendon to the designated third parties regarding Springfield injured Springfield in an amount at least equivalent to the judgment amount.").

      Finally, McClendon argues that because exceptions to dischargeability are construed liberally in favor of the debtor, two issues should have been resolved in his favor: whether the jury found that he published the statements intentionally or negligently, and whether the qualified privilege was overcome by a finding of actual knowledge or by a finding of recklessness. (Dkt. No. 8 at 31 (citing *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009) ("The exceptions are construed strictly against the creditor and liberally in favor of the debtor.")).)  McClendon offers no analysis in support of these conclusory contentions.  McClendon does not, for example, identify any doubt the bankruptcy court may have had regarding these two issues.  On the contrary, the bankruptcy court acknowledged such issues and expressly found that Springfield could not solely rely upon the jury's finding to establish that McClendon subjectively intended to injure him or that there was an objective substantial certainty of harm arising from McClendon's conduct.  FOFCOL at 15 ¶¶ 39-41.  The bankruptcy court then found that "the pernicious nature of a false statement to a third party accusing another person of a crime creates an objective substantial certainty of harm to that person" and, thus, "[u]nder the circumstances presented in this case, the false statements made by McClendon to the designated third parties

9

regarding Springfield created an objective substantial certainty of harm to Springfield." FOFCOL at 15 ¶¶ 42-43. The Court agrees with the bankruptcy court's conclusions and McClendon has not identified any error in these conclusions. Accordingly, the Court finds that the bankruptcy court did not commit any error in finding that the debt owed by McClendon to Springfield was non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

### b. The Bankruptcy Court Did Not Ignore McClendon's Permanent Injunction

McClendon argues that his confirmed Chapter 11 Plan contains a permanent injunction against "the commencement of continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor . . . ." Springfield responds that the Plan provides "that each holder of Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court." Springfield further argues that the provisions of a plan do not bind a creditor whose debt is non-dischargeable under 11 U.S.C. § 523. Specifically, § 1141(a), which binds any creditor to the provisions of a confirmed plan, does not "discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title."

The Court agrees with Springfield. Further, the bankruptcy court in McClendon's Chapter 11 proceeding entered an order allowing the proof of claim filed by Springfield and specifying that it had no effect upon the parties' respective claims and defenses regarding non-dischargeability in the adversary proceeding below. *In re: Larry Gene McClendon*, Case No. 4:11-41527 (Bankr. E.D. Tex. Nov. 2, 2013), Dkt. No. 155. Accordingly, the Court finds that Springfield was not enjoined from commencing the adversary proceeding seeking a declaration of non-dischargeability.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that the bankruptcy court's judgment in favor of Springfield should be and is hereby **AFFIRMED**.

**So ORDERED and SIGNED this 16th day of September, 2013.**

```
_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE
```